UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

DANIEL BURLOCK, MAJOR PAWN INC.,
ELLIE GEULA, KING CASH PAWN & JEWELRY INC.,
CRAIG GOLUB, GEM OF MOUNT VERNON INC.,
GEM OF MELVILLE INC., PARAG BHATT, KPM      **CLASS ACTION**
GOLD & GEM LLC, d/b/a PAWN SHOP OF BABYLON,   **COMPLAINT**
DAVID SHAMOSH, and NY TREASURE BOX INC.,
on behalf of themselves and Others similarly situated,

                               Plaintiffs,      **Jury Trial Demanded**

     - against -

THE COUNTY OF SUFFOLK
                             Defendant.
-----------------------------------------------------------------------X

Plaintiffs, DANIEL BURLOCK, MAJOR PAWN INC., ELLIE GEULA, KING CASH

PAWN & JEWELRY INC., CRAIG GOLUB, GEM OF MOUNT VERNON INC., GEM OF

MELVILLE INC., PARAG BHATT, KPM GOLD & GEM LLC d/b/a PAWN SHOP OF

BABYLON, DAVID SHAMOSH, and NY TREASURE BOX INC., on behalf of themselves

and others similarly situated, by and through their attorneys, CAMPANELLI & ASSOCIATES,

P.C., respectfully allege as follows:

## I.    Nature of This Action

1.    The plaintiffs bring this case both on behalf of themselves and as a Class

Action, seeking a declaratory judgment, injunctive relief, compensatory damages,

costs and attorneys fees, pursuant to 42 U.S.C. §§1983 and §1988, for deprivation of

plaintiffs' rights, and the rights of those similarly situated, which are secured by the Fourth,

Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

2.      At all relevant times described herein, the plaintiffs were engaged in the business of purchasing, selling and/or exchanging jewelry, precious metals, diamonds and/or other valuable personal property.

3.      Under Chapter 563 Article IV of the Suffolk County Code (SCC), the plaintiffs' businesses constitute "Precious Metal and Gem Exchanges" (hereinafter referred to as "Precious Metals Dealers").

4.      Precious Metals Dealers, such as the plaintiffs, are both licensed and heavily regulated by the defendant County of Suffolk, pursuant to Article IV, a copy of which is annexed hereto, and made a part hereof, as Exhibit "A."

5.      Included within the regulations that the County has imposed upon Precious Metals Dealers are statutory requirements under SCC §563-41 and §563-43, that for each and every piece of jewelry, gold or gem they purchase, the plaintiffs are required to contemporaneously electronically transmit detailed data about each such purchase into a computer database owned and maintained by the defendant County.

6.      As a result of such requirements imposed by the County, the Suffolk County Police Department (SCPD) and its employees have a constant and current inventory of all of the jewelry, gold, and gems contained within the plaintiffs' stores at all times.

7.      SCC §563-42 vests detectives of the SCPD with unbridled power and unlimited discretion to make inspections of plaintiffs' business premises, virtually at will, and for any purpose, whatsoever.

8.      Being in possession of such highly detailed information about the inventory and valuables contained in the plaintiffs' stores, unbridled and unsupervised power to "inspect" the plaintiffs' places of business at any time, and the ability to make warrantless seizures of the plaintiffs' property any time they wish, detectives of the SCPD conduct continuous and blatantly unconstitutional warrantless seizure operations.

9.      Vested with such unsupervised powers, they simply enter the plaintiffs' places of business at any time they choose, make warrantless seizures of any valuable items of personal property which the detectives simply "choose to take," and they thereafter deprive the plaintiffs of the seized property permanently, and refuse to disclose to the plaintiffs what ultimately happened to it.

10.     The items most typically seized, (without warrants) by SCPD detectives include jewelry, gold, precious gems, watches, and other valuable items of personal property belonging to the plaintiffs and/or in which the plaintiffs have a possessory interest.

11.     To date, SCPD detectives have seized hundreds of thousands of dollars of such personal property from the plaintiffs and other dealers, none of which has been returned to the plaintiffs and other dealers, and none of which has been accounted for, meaning that the SCPD and the defendant County have adamantly refused to disclose to the plaintiffs and other dealers what became of their property which has been seized from them.

12.     Under these seizure operations, the SCPD does not afford the dealers within any pre-seizure or post-seizure an opportunity to: (a) object to the initial warrantless seizure of their property, (b) object to the County's continued retention of their property, (c) demand the return of their property, or (d) object to the County's disposal of their property.

3

13.     While affording the plaintiffs within no notice of same, the defendant County

thereafter: (a) releases or gives the plaintiffs' property to third parties without the plaintiffs'

knowledge or consent, (b) sells the plaintiffs' property by public auction without the plaintiffs'

knowledge or consent, (c) retains the property indefinitely, or (d) permits the property

to simply "*disappear*," meaning that the SCPD is no longer in possession of the plaintiffs'

property and it has no record of what became of it.

14.     Upon information and belief, in more than three thousand (3,000) cases,

after the property was seized by a detective of the SCPD, the property has simply disappeared.

15.     The *reason* that the County has no record of well over three thousand (3,000)

items of such personal property is because the SCPD has systematically failed to comply with its

own property-recording requirements and procedures that were implemented by Order of the

SCPD Police Commissioner on March 3, 2008, under Department Directive Order number 08-

20/08-39, a true copy of which is annexed hereto, and made part hereof, as Exhibit "B."

16.     By such Order of the Police Commissioner, the SCPD adopted Rules and

Procedures Chapter 20, Section 3, as the procedure governing the process by which

employees of the Police Department seize and take into possession personal property, and keep

and maintain records of both the seizure and disposal of such property. *See* Exhibit "B."

17.     As required under those rules and procedures, when a detective of the SCPD

seizes an item of personal property from a Precious Metals Dealer, they are required to provide

the dealer with a "general receipt" for the item (*See* Exhibit "B" at page 3).

4

18.     The detective is then required to bring the item to the SCPD, and create an entry into a written property logbook at the Police Department, to record that the specific item has been taken into the custody of the Department. *See* Exhibit "B."

19.     A sampling of "general receipts" which detectives of the SCPD have provided to the plaintiffs herein when they entered the plaintiffs' stores and made warrantless seizures of the plaintiffs' property, is annexed hereto and made a part hereof as Exhibit "C" - receipts received from SCPD detectives for items that were seized without a warrant from plaintiffs Craig Golub, Gem of Mount Vernon Inc., and Gem of Melville Inc., Exhibit "D" – receipts received from SCPD detectives for items that were seized without a warrant from plaintiffs Daniel Burlock and Major Pawn Inc., Exhibit "E" - receipts received from SCPD detectives for items that were seized without a warrant from plaintiffs Ellie Geula and King Cash Pawn and Jewelry Inc. and Exhibit "F" - receipts received from SCPD detectives for items that were seized without a warrant from plaintiffs Parag Bhatt and KPM Gold & Gem, LLC.

20.     All of the personal property recorded within those receipts were seized by detectives of the SCPD without any warrant. None of the property described within the attached receipts have ever been returned to the plaintiffs, and both the SCPD and the Office of the Suffolk County District Attorneys Office, have refused to disclose to the plaintiffs what ultimately became of their property which is listed in those receipts.

21.     Under Chapter 20, Section 3 of the SCPD Rules of Procedure (Exhibit "B") each police precinct is required to maintain a written property log into which the respective detective who seized such property was, and is, required to *record* each respective item that they have seized.

5

22.     Once the detective records that the item has been taken into the possession of the SCPD in that logbook, the precinct is then required to maintain that log for six (6) years, after which the logbook is required to be transferred to the Office of the SCPD Property Clerk, which is then required to retain those records "*permanently*." *See* Exhibit "B" Sections VI(E) and VI(F).

23.     At some point in time unknown to the plaintiffs, the SCPD apparently simply stopped maintaining those required logbooks, and instead, began employing an electronic recording system known as WinACE, which has now enabled SCPD detectives and/or other employees to dispose of the seized property without making any record of such disposals in any records of the Police Department.

24.     As was revealed in an audit of the SCPD Property Section that was performed for the limited period from when the SCPD stopped maintaining their logbooks, through May 31, 2010, the Office of the Suffolk County Comptroller found that, *in that period alone*, three thousand two hundred seventy-one (3,271) items of seized personal property that had been logged into the electronic recording system were no longer in the SCPD's possession and the SCPD had no record of what became of them. *See* a true copy of the Suffolk County Comptroller's Audit is annexed hereto as Exhibit "G," at page 8.

25.     As a result of the foregoing, the plaintiffs and those similarly situated have been deprived of hundreds of thousands of dollars worth of their personal property, as well as their personal business records, without due process of law in violation of their United States Constitutional rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments, and Article I, Section 6 of the New York State Constitution.

26.     The plaintiffs bring this action on behalf of themselves, and other Precious Metals Dealers who have also been the subjects of such unlawful seizures and deprivations, to seek, among other things, compensatory damages for having been permanently deprived of their property without due process of law, and to obtain injunctive relief to prevent ongoing unlawful warrantless seizures and disposals of their valuable properties.

27.     The plaintiffs also bring this action to obtain a declaratory judgment, adjudging and declaring both: (a) Articles I and IV of Chapter 563 of the Suffolk County Code (Exhibits "A" and "O"), and (b) the written policy and procedure of the SCPD which was implemented by order of the Police Commissioner dated 3/11/2018 and/or 5/23/2008 (Exhibit "B"), unconstitutional, both *as written*, and *as applied* to both the plaintiffs herein and the other Precious Metals Dealers who are similarly situated, and to obtain injunctive relief to enjoin their continued application against the plaintiffs and similarly situated Precious Metals Dealers.

## II.     Jurisdiction and Venue

28.     Jurisdiction is conferred on this Court by 28 U.S.C. §§1343(a)(3) and §1343(a)(4), which provide for original jurisdiction in the Court for all suits brought pursuant to 42 U.S.C. §1983.

29.     Jurisdiction is conferred on this Court by 28 U.S.C. §1331 because the cause of action arises under the Constitution and laws of the United States.

30.     The supplemental jurisdiction of the District Court is invoked pursuant to 28 U.S.C. §1367 for inter-related state claims which arise from the occurrences giving rise to the federal claims and which have a common nucleus of operative fact.

7

31.     Venue lies in the Court pursuant to 28 U.S.C. §1391(b)(ii) in that Suffolk County is the underlying County for purposes of venue and where the vast majority of the events occurred.

## III.    The Parties

32.     Plaintiff Daniel Burlock is an individual whose actual place of business and employ is within the County of Suffolk, State of New York.

33.     At all relevant times described herein, plaintiff MAJOR PAWN INC. was, and remains, a domestic business corporation duly organized under the laws of the State of New York, with a principal place of business situated at 111 Sunrise Highway, Lindenhurst, County of Suffolk, New York.

34.     Plaintiff Ellie Geula is an individual whose actual place of business and employ is within the County of Suffolk, State of New York.

35.     At all relevant times described herein, plaintiff KING CASH PAWN & JEWELRY INC. was, and remains, a domestic business corporation duly organized under the laws of the State of New York, with a principal place of business situated at 47 East Sunrise Highway, Lindenhurst, County of Suffolk, New York.

36.     Plaintiff Craig Golub is an individual whose actual place of business and employ is within the County of Suffolk, State of New York.

37.     At all relevant times described herein, plaintiff GEM OF MOUNT VERNON INC. was, and remains, a domestic business corporation duly organized under the laws of the State of New York, with a principal place of business situated at 430 Middle Country Road, Selden, County of Suffolk, New York.

8

38.     At all relevant times described herein, plaintiff GEM OF MELVILLE INC. was, and remains, a domestic business corporation duly organized under the laws of the State of New York, with a principal place of business situated at 708 Walt Whitman Road, Melville, County of Suffolk, New York.

39.     Plaintiff Parag Bhatt is an individual, whose actual place of business and employ is within the County of Suffolk, State of New York.

40.     At all relevant times described herein, plaintiff KPM GOLD & GEM LLC was, and remains, a limited liability company duly organized under the laws of the State of New York, with a principal place of business situated at 366 Little East Neck Road, West Babylon, County of Suffolk, New York.

41.     Plaintiff David Shamosh is an individual whose actual place of business and employ is within the County of Suffolk, State of New York.

42.     At all relevant times described herein, plaintiff NY TREASURE BOX INC.was, and remains, a domestic business corporation duly organized under the laws of the State of New York, with a principal place of business situated at 20 Veterans Memorial Highway, Commack, County of Suffolk, New York.

43.     Upon information and belief, the defendant THE COUNTY OF SUFFOLK is a municipal corporation organized and operating under New York State law, with a principal place of business situated at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

44.     At all times described herein, the Suffolk County Police Department was, and remains, an agency of the defendant County of Suffolk.

## IV.    Preliminary Background

45.     On or about May 12, 2009, the County of Suffolk amended Chapter 563 of the Suffolk County Code to incorporate regulations to govern persons engaged in the business of the "sale, purchase or exchange of precious metals and/or gems or other objects of precious metals or gems" *See* Exhibit "A."

46.     In enacting such provisions, the County implemented a requirement that any persons engaged in business as a Precious Metals Dealer obtain and maintain a license from the County. *See* SCC §563-37.

47.     Furthermore, the County imposed additional statutory requirements upon Precious Metals Dealers, which included the following:

(a)     A requirement, pursuant to Suffolk County Code §563-41(A), that every licensed dealer not merely record every transaction of any item they purchase in conducting their business, but also: (i) a description of each item and its weight, (ii) the amount they paid for the item, (iii) the date of the purchase, (iv) the name, home address, date of birth, sex, color and description of clothing of the person who sold them the item, and their signature,

(b)     A requirement, pursuant to Suffolk County Code §563-43, that every licensed dealer provides a report, each and every day, to the Suffolk County Police Commissioner and/or the Suffolk County Chief of Police, containing all of the information set forth within subparagraph (a) immediately hereinabove.

48.     Being possessed of the information which dealers are statutorily required to disclose each and every day to the Suffolk County Police Department (SCPD), detectives of SCPD know the current inventory contained in dealers' stores at all times.

49.     Being possessed of such information, SCPD detectives routinely enter dealers' places of business, arbitrarily seize various items of valuable jewelry, gold, other valuables and business records from the dealers, and give them a simple receipt for same, without any warrants authorizing any such seizures.

50.     Aside from the fact that these were warrantless seizures, in many cases, the detectives who seized property from the dealers lacked probable cause or any basis to believe that the property they were seizing was needed as evidence of a crime, or constituted stolen property.

51.     Very often the defendant's detectives would simply seize property, and then begin an investigation to try to find some basis to believe that the property was stolen.

52.     By way of example, detectives would routinely seize *engraved* items of property for no reason other than the fact that the item had been *engraved*.

53.     *After* seizing such property, the detectives would then *begin* an investigation to see if they could establish that the seized item was, in fact, stolen.

54.     Moreover, the baseless warrantless seizures of engraved items were not limited to, class rings and jewelry, but included virtually anything that had been engraved.

55.      Engraved items were seized without a warrant, despite the fact that the detective who seized each respective item, was not seizing such property in response to any report of a stolen item which matched the description of the property they were seizing.

56.     By way of example, Exhibit "H" annexed hereto, is a *Newsday* article pertaining to an engraved chalice which was seized from a pawn shop by SCPD detectives who were thereafter "trying to locate the owner" to "*determine whether [it was] stolen.*"

11

57.     Neither SCC Article IV, nor Chapter 20 Section 3 of the Rules and Procedures of the SCPD (Exhibits "A" and "B"), contain or provide:

    (a)     any pre-seizure substitutes for a warrant,

    (b)     any provision, policy, practice or procedure of providing the dealers, who are the owners of property being seized, with any notice of if, how, or when they may seek to reclaim their property which has been seized,

    (c)     any provision, policy, practice or procedure through which such dealers are afforded any procedure or hearing at which they are able to:

        (i)     object to the initial warrantless seizure of their property,

        (ii)     object to the defendant's agents continuing retention of their property,

        (iii)     demand the release or return of their property, or

        (iv)     object to the defendant's agents disposing of their property.

58.     In addition to the lack of any codified procedures to afford the dealers with any form of pre-seizure or post-seizure due process, the defendant County has wholly failed to train or supervise its employees, including but not limited to, with regard to affording property owners any semblance of due process in connection with the warrantless seizure and subsequent disposal of plaintiffs' personal property.

59.     The failure to properly train and supervise detectives and other employees of the defendant has been continuous for years, as a result of which unlawful warrantless seizures from licensed Precious Metals Dealers by the detectives has been widespread, as have been the grossly unconstitutional abuses of Precious Metals Dealers by SCPD detectives.

60.     The plaintiffs' as store owners never consented to the seizure of any of their personal properties and store inventory, but were forced to stand back as detectives of the SCPD simply entered their stores and proceeded to take whatever they wanted, all without a warrant.

61.     To the extent that store owners have tried to object to the warrantless seizures of their property, they have been threatened, abused, and retaliated against, by detectives who are free to abuse and retaliate against the store owners due to a wholesale lack of proper supervision and training on the part of the defendant County and the SCPD.

62.     Store owners and dealers who have objected to the warrantless seizures of their property were retaliated against by SCPD employees, who thereafter "audited" the records of the store owner, and caused them to be charged with wholly unconstitutional technical violations under the Suffolk County Code, for which they were constrained to pay tens of thousands of dollars in fines, as punishment for having tried to object to the warrantless seizures of their property.

63.     On other occasions, if a store owner tried to object to detectives seizing their property, detectives would also subject them to other retaliatory tactics.

64.     By way of example, they would take retaliatory action intended to interfere with and/or harm the plaintiffs' businesses.

13

65.     They would park their police car near the plaintiffs' places of business, and proceed to then tailgate and pull over customers as they left the plaintiffs' stores, thereby dissuading customers from coming back to the store.

66.     They would park their marked police car right in front of the store and/or would simply stay in front of the store for prolonged periods in an effort to drive potential customers away.

67.     On other occasions, they would "curse out" store owners, demand to them that they surrender their license to do business and/or demand that they "*get the fuck out of the County*" or out of the Country.

68.     To the extent that store owners have complained to detectives that the property which detectives had taken from them, was never returned to them, with absolutely no explanation as to what happened to it, one or more SCPD detectives have explicitly told one or more store owners "*that's the cost of doing business.*"

69.     The highly abusive and retaliatory acts of the defendant's employees in threatening plaintiffs who tried to protect their valuable goods and property against warrantless baseless seizures, knowing that their property would likely never thereafter be returned to them, or accounted for, should clearly shock the judicial conscience.

70.     The plaintiffs and other dealers were continuously subject to such harassment and tactics due to a wholesale failure, on the part of the County, to properly train and supervise their employees to prevent such abuses from occurring.

14

71.    To the extent that any detective or employee of the SCPD possessed the belief that property they were seizing from the plaintiffs may have constituted stolen property, or was needed as evidence of a crime, neither the SCPD or the Suffolk County District Attorneys' Office has any policy, practice or procedure of notifying dealers/owners if any personal property which had been seized from them, was ultimately determined *not to be* stolen property or the evidence of a crime, or if, or when, any related criminal case pertaining to such property has been concluded.

72.    To the extent that dealers have contacted the Office of the Suffolk County District Attorney or the SCPD in an attempt to ascertain if there was a claim that the property which had been seized from them was believed to be evidence of a crime or stolen property, they advised the dealers that: (a) the DA's office and the SCPD "do not recognize" the dealers to be "crime victims," and concomitantly (b) the dealers were not entitled to any information regarding what happened to the property which had been seized from them.

**V.      The Defendant's Unconstitutional Practices are Applied Against
the Plaintiffs, in Violation of the Plaintiffs' Constitutional Rights**

73.      At all relevant times described herein, each of the plaintiffs was licensed to operate, and did operate, businesses as Precious Metals Dealers within the County of Suffolk.

74.      Each of the plaintiffs were subject to unlawful warrantless seizures by employees of the SCPD, wherein detectives of the SCPD entered the plaintiffs' stores, made warrantless seizures of valuable personal property belonging to the plaintiffs and/or in which the plaintiffs held a possessory interest, and the defendant County's agents thereafter deprived the plaintiffs of their properties permanently.

75.      Such seizures have been ongoing, and have continued through 2019, as evidenced by the receipts annexed hereto as Exhibits "C," "D," "E" and "F" which bear seizure dates up to and including dates in 2019.

76.      At the time of such respective seizures, the detectives and/or other employees of the SCPD gave the plaintiffs simple receipts confirming each respective seizure, in writing, but they did not provide the plaintiffs with any notice or instructions, written or otherwise, as to any procedure or process by which the plaintiffs could seek to reclaim or recover their property.

## VI.     Plaintiffs' Attempts to Recover Their Property

77.     As described hereinabove, neither the defendant County of Suffolk, nor any agency thereof, has any practice, policy or procedure through which the owners of personal property items that have been seized by the SCPD can seek their return, or challenge any third party's claims of ownership to such property, or to even object to the disposal or sale of their property without affording them notice of any such disposal, or any opportunity to object to same.

78.     As has been, and is, publicly disclosed by the SCPD, the only recourse available to persons seeking the return of property that has been seized from them by the SCPD, is to wait until they receive a letter from the Police Department notifying them that their property is "*releasable*." *See* Exhibit "I."

79.     The Suffolk County Police Department has also publicly disclosed that it only recognizes three (3) circumstances under which persons, who have not received release letters from the Police Department *can seek the release of their seized property*.

80.     They are explicitly limited to: (a) "Crime Victims", (b) Arrestees seeking the return of property which was seized as evidence, and (c) Arrestees seeking the return of their personal property (prisoner property). *See* Exhibit "I" annexed hereto, which is a true copy of a Suffolk County Police Department's internet website page that explains its procedure for obtaining the release of seized property. It explicitly identifies the only three (3) types of claimants who are permitted to seek the release of their seized property from the Police Department without having received a release letter from the Department.

17

81.     With the SCPD having randomly seized hundreds of thousands of dollars' worth of their valuable personal property without any warrants for such seizures, dealers have made requests and demands for the release of their property.

82.     But since the plaintiffs, and other dealers, do not fall within the list of claimants whom the SCPD "allows" to make demands for the return of their respective property, the plaintiffs and dealers' demands were simply ignored entirely.

83.     Copies of written demands for the return of their property, or at a minimum, a disclosure of what happened to the plaintiff's property, each of which were served upon the SCPD by first class mail, are annexed hereto as Exhibits "J," "K," "L" and "M."

84.     Plaintiffs and similarly situated dealers have made multiple demands to both the Suffolk County Police Department and the Suffolk County District Attorney's Office for:

(a)     the return of their property to them,

(b)     information as to if, and when, the property has ever been determined to have been stolen or the evidence of a crime,

(c)     information as to if, and when, any criminal action pertaining to or concerning the property was commenced, is pending, or has been completed, and

(d)     information pertaining to how their property has been disposed of, and if it has not been disposed of, where it is currently being held.

85.     In response to such demands, both representatives of the SCPD, and the District Attorney's Office have advised the plaintiffs that:

      (a)     they are not entitled to demand the release of the property which has been seized from them, and

      (b)     they are not entitled to any of the requested information, because neither the Suffolk County Police Department nor the District Attorney's Office *recognizes them* to be "crime victims."

86.     In response to requests for the release of their property, or for information about any criminal proceeding related to their property, dealers were explicitly told by multiple representatives of the Suffolk County District Attorney's Office, including Assistant District Attorney (ADA) Hartman and ADA Tamela Gaither that since the Suffolk County District Attorney's Office does not recognize the plaintiffs to be "crime victims," they have no right to demand the release of their property, and no right to receive any information regarding any criminal cases pertaining to the property which was seized from them.

87.     In response to identical requests which the dealers have made to the Suffolk County Police Department, they were similarly told by employees of the Suffolk County Police Department, that since the Police Department does not recognize them as crime victims, they have no right to demand the release of their property, and no right to receive any information regarding any criminal cases pertaining to the property that was seized from them.

19

88.     Representatives of the Suffolk County Police Department (SCPD) who told dealers that they had no such rights included: Officer Berger from the 1st precinct of the SCPD, Detective Britton from the 3rd Squad of the SCPD, and Detective Brad Lanser of the SCPD.

89.     Dealers also requested information as to whether the SCPD had any procedure through which the dealers could seek the release of their property, and the representatives of the SCPD advised the dealers that they did not know of any such procedure. Such representatives included Detective Dean from the 1st Squad of the SCPD, Detective Cortes from the 1st Squad of the SCPD and Detective Capute from the Property Recovery Department of the SCPD.

90.     Upon information and belief, in having deprived the plaintiffs of their personal property indefinitely and/or permanently, it is believed that the defendant's agents have: (a) given possession of some of the plaintiffs' property to third parties, (b) sold some of the plaintiffs' property at public auctions, (c) retained some of the plaintiffs' property, without having afforded the plaintiffs any procedure through which the plaintiffs could seek its release, and (d) simply permitted much of the property to simply *disappear*.

## VII.    The Class Under Rule 23 of the
## Federal Rules of Civil Procedure

91.    The named plaintiffs herein bring this action both on their own behalf and as a

Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

### Class Prerequisites Under Rule 23(a)

92.    The members of the Class are all licensed Precious Metals Dealers who have been

subject to unlawful warrantless seizures by the defendant, through its agents, and who have

similarly be subjected to the enforcement of the defendant County's patently unconstitutional

provisions of the Suffolk County Code and policies, practices and procedures adopted and

implemented in conjunction with same, as more fully set forth hereinbelow.

93.    There are a total of two hundred and five (205) such Precious Metals Dealers,

inclusive of the named plaintiffs herein.

94.    A listing of all such 205 Precious Metals Dealers licensed by the defendant

County is annexed to, and made part of this complaint, as Exhibit "N."

95.    As set forth below, a Class action may be properly maintained herein because: (1)

the Class is so numerous that joinder of all members is impracticable, (2) there are questions of

law and fact that are common to the Class, (3) the claims of the representative plaintiffs are

typical of the claims of the Class and (4) the representative parties will fairly and adequately

protect the Class.

96.     As reflected in Exhibit "N," the potential size of the class is 205 members.

97.     Upon information and belief, all members of the class were subject to precisely the same constitutional violations more fully set forth hereinbelow, and the receipts annexed as Exhibits "C," "D," "E" and "F" to this complaint are the very same form receipts that were provided to other members of the class when warrantless seizures were made of their respective properties.

98.     All members of the Class have virtually identical questions of law and fact.

99.     All members of the Class: (a) have been subject to warrantless seizures of their property seized by agents of the defendant, County; (b) none of them were afforded any pre-seizure or post-seizure due process in connection with such seizures and (c) all of them were subjected to the application of the defendant County's patently unconstitutional law.

100.    As a result, each member of the Class was deprived of property rights in their personal property without due process of law, in violation of the protections guaranteed to them under the Fourth, Fifth and Fourteenth Amendments, and they suffered compensable monetary damages as a direct result of same.

101.    The plaintiffs' claims are virtually identical to those other dealers who suffered the identical deprivations at the hands of the same agents of the same defendant.

102.    In bringing this action, the plaintiffs are acutely suited to adequately protect the interests of those who were injured by the defendants in precisely the same manner as they inflicted the virtually identical injuries to them

103.     To enforce their rights, the plaintiffs have retained experienced civil rights and civil forfeiture counsel, who has handled more than six thousand (6,000) cases involving governmental seizures of personal property.

104.     Their counsel has also been prosecuting civil rights actions for over twenty-five (25) years and has successfully pursued actions under 42 U.S.C. §1983 against the defendant County of Suffolk in multiple cases before the United States District Court, Eastern District of New York, for civil rights deprivations which arose in connection with the County's seizures of personal property.

105.     As such, the plaintiffs are capable of fairly and adequately protecting the interests of the members of the Class.

<u>Type of Class Under Rule 23(b)(3)</u>

106.     Certification of the Class described herein is appropriate under Rule 23(b)(3) because the questions common to the Class *predominate* over questions which affect only individual Class members, those issues which are subject only to individualized proof.

107.     The predominating issues identical to the claim of every Class member include, but are not limited to, the defendant deprived the plaintiffs and members of the class of personal property without due process of law, and without any pre-seizure or post-seizure practices or procedures through which the defendant afforded, or could have afforded members of the class with due process as was required under the constraints of the Due Process Clause of the Fourteenth Amendment.

108.    Given the commonality of issues to every member of the Class, permitting this case to proceed as a Class action would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

109.    Finally, in many of the members' claims, the individual damages would be too small for individual lawsuits to be economically feasible.

## COUNT I
### Unlawful Seizure, Procedural and Substantive Due Process
### Fourth, Fifth and Fifteenth Amendments
### 42 U.S.C. §1983

110.    The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "109" hereinabove, with the same force and effect as if fully set forth at length herein.

111.    By its agents and employees, each of whom was acting under color of state law, the defendant, County of Suffolk deprived the plaintiffs of their personal property described herein without having afforded the plaintiffs due process by:

(a)    seizing plaintiffs' personal property without notice or warrants, and depriving the plaintiffs of same permanently or indefinitely;

(b)    releasing and/or transferring possession of some of the plaintiffs' property to third parties, without affording plaintiffs notice or any opportunity to object to such release, or to challenge any third-party's claims to plaintiffs' property;

24

(c)      selling plaintiffs' property at public auction;

(d)      retaining plaintiffs' property indefinitely and/or permanently.

112.    In doing so, the defendant: (a) afforded the plaintiffs no pre-deprivation or post-deprivation process, procedure or notice, through which they could challenge the initial seizure, temporary deprivation, and/or permanent deprivation of the plaintiffs' property and (b) failed to provide notice to the plaintiffs as to how they could reclaim their property.

113.    Defendant Suffolk knew or should have known that it was unlawful and unconstitutional to make warrantless seizures of personal property from the plaintiffs and to thereafter deny them possession of their property permanently.

114.    Defendant Suffolk knew or should have known that it was unlawful and unconstitutional to release plaintiffs' property to third persons, sell it, and/or retain it indefinitely, all without affording the plaintiffs notice or any hearing or process through which the plaintiffs could have objected to or challenged the validity of such deprivations.

115.    The failure by official Suffolk policymakers to create, implement, maintain and afford notice of, policies and procedures through which Precious Metals Dealers inclusive of the plaintiffs: (a) could seek the release of their personal property, (b) would be made aware of such procedures through which they could seek to recover same and (c) be afforded an opportunity to object to any unauthorized disposition of personal property, amounts to deliberate indifference to the rights of the plaintiffs, as made clear by numerous controlling court decisions including: McClendon v. Rosetti, 460 F.2d 111, (2nd Cir 1972), Butler v. Castro, 896 F2d 698 (2nd Cir 1990), Alexandre v. Cortes, 140 F2d 406 (2nd Cir 1998), Tammaro v. City of New York, 2018 U.S. Dist. LEXIS 54729, Krimstock v Kelly, 464 F.3d 246 (2nd Cir. 2006).

116.     Contemporaneously, the failure by official Suffolk policymakers to properly train or supervise subordinates regarding the process due in conjunction with the seizure, detention and disposal of personal property, similarly amounts to deliberate indifference to the rights of persons and parties who own or have interests in personal property which is seized, detained, sold and/or disposed of by defendant Suffolk.

117.     But for Suffolk's failure to implement constitutionally required policies, practices, and procedures, and due to its failure to properly train and supervise its employees, the plaintiffs would not have been deprived of their property in violation of their U.S Constitutional rights to due process, and would have recovered same without delay or with minimal delay, by measures that would have preserved their legitimate interests.

A.     The Defendant's Agents' Initial Warrantless Seizures of the Plaintiffs'
       Properties Violated the Plaintiffs' Rights to Due Process and the Plaintiffs'
       Constitutional Rights against Unreasonable Searches and Seizures

118.     It is clearly established law, that when police department employees seize personal property, the constraints of due process require that at the time of seizure, the government must: (a) have in place a procedure through which that person may seek to reclaim or recover the property which is being seized from them by the police, and (b) the employee of the police department who is seizing such property must give them written notice of what that procedure is at the time of seizure. *See e.g.* Alexandre v. Cortez, 140 F3d. 406 (2nd Cir. 1998), Butler v. Castro, 896 F2d 698 (2nd Cir. 1990) and McClendon v. Rosetti, 460 F2d 111 (2nd Cir. 1972).

119.    At the time of each and every seizure of the items for which detectives of the SCPD gave the plaintiffs the receipts which are annexed hereto as Exhibits "C," "D," "E" and "F," the respective detectives never gave any of the plaintiffs any written notice of any procedure as to how the plaintiffs could have sought to reclaim their property.

120.    Nor could they have, simply because the defendant and the SCPD do not have any such procedure.

121.    In fact, it was, and remains the position of the defendant County and the SCPD, that the plaintiffs have no right to any such procedure, no right to request the return of the property which has been seized from them without any warrant, and no right to any information as to if, how and when the property which the defendant's employees have seized from them, has been disposed of by the SCPD or the County.

122.    These constitutional violations are exacerbated by the fact that on many occasions when a detective of the SCPD made a warrantless seizure of property from the plaintiffs, the detective lacked probable cause to believe that the property that they were seizing was needed as evidence of a crime, or constituted stolen property. They simply arbitrarily seized it because of some characteristic of the property itself, such as the fact that an item had been *engraved. See* Exhibit "H."

123.    To the extent that seizures were made without any procedure in place through which the plaintiffs could seek to reclaim their property, the plaintiffs were deprived of their properties without due process, in violation of the constraints of the Fifth and Fourteenth Amendments.

124.    Contemporaneously, because each such search and seizure was made without a warrant, each and every such search and seizure constituted an unreasonable search and seizure within the purview of the Fourth Amendment, in violation of the protections guaranteed to the plaintiffs under the Fourth Amendment.

B.    The Defendant's *Continued Retention* of the Plaintiffs' Property
      <u>Violated the Plaintiffs' Rights to Due Process</u>

125.    It is clearly established law, that when police seize property under the belief that it is needed as evidence of a crime or stolen property, and the police thereafter retain continuing possession of same after any related criminal proceeding is terminated, and the property is no longer needed as evidence, the continued retention of the property is violative of the Due Process Clause under the Fifth and Fourteenth Amendments. *See* <u>McClendon v. Rosetti</u>, 460 F2d. 111 (2nd Cir. 1972).

126.    Upon information and belief, to the extent that detectives of the SPCD seized personal property from the plaintiffs under a belief that it was needed as evidence of a crime, or that it was stolen property, in many cases, the seized property has never been returned to the plaintiffs despite the fact that: (a) no criminal proceedings involving such property were ever commenced, (b) related criminal proceedings were commenced and then terminated, (c) the property never was needed or is no longer needed, as evidence in any proceeding, and (d) there was never any judicial determination that the subject property had, in fact, been stolen.

127.    Since there is no longer any legal basis for the defendant to continue retaining possession of the plaintiffs' property, the constraints of the Fourth, Fifth and Fourteenth Amendments required the defendants to immediately return the plaintiffs' property to them, or to seek a Court order or proceeding within which to establish a new legal predicate for their continuing deprivation of the plaintiffs' property.

128.    Since the defendant and its agents failed to do so, and such failure continues at present, the defendant has violated, and continues to violate the plaintiffs' rights under the Fourth Amendment against unreasonable seizures, and the plaintiffs' rights to due process under the Fifth and Fourteenth Amendments, for having deprived the plaintiffs of their property without due process of law.

C.    The Defendant's *Disposal* of the Plaintiffs' Property
Without Notice of Any Opportunity to Object to Same
<u>Violated the Plaintiffs' Rights to Due Process</u>

129.    As has been clearly-established law for decades, under the constraints of the Due Process Clause, municipalities whose employees make warrantless seizures of personal property cannot thereafter release such property to third parties, irrespective of any ownership claims or interests asserted by such third parties, without affording the person from whom they seized such property with notice and a procedure through which the person can object to the unauthorized release of their property to such third parties. *See* <u>Alexandre v. Cortez</u>, 140 F3d. 406 (2nd Cir. 1998).

130.    Nor can the municipality place the burden upon the person from whom the property has been seized, to establish that they have a possessory right in the property which has been seized from them.

131.    Upon information and belief, after making warrantless seizures of the plaintiffs' personal properties, the defendant's agents thereafter simply gave or released much of the plaintiffs' properties to third parties without affording the plaintiffs notice or any opportunity or procedure through which to object to the unauthorized release of their properties to third parties,

132.    In having disposed of the plaintiffs' personal properties which the defendant's agents had seized from the plaintiffs, without first having afforded the plaintiffs notice, a procedure and an opportunity to be heard, the defendant deprived the plaintiffs of their property without due process of law, in violation of the plaintiffs' rights under the Fifth and Fourteenth Amendments, and the defendant is properly liable to the plaintiffs for same.

133.    As a direct and proximate result of defendant Suffolk's violation of plaintiffs' rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution, the plaintiffs have suffered damages including, but not limited to, the loss of their valuable personal property, and the loss of possession, use and ability to sell their property in the conduct of their business.

134.    The defendant has failed and refused to return the plaintiffs' personal property, although the plaintiffs have duly demanded the return of same.

135.    As a result of such deprivations, the plaintiffs have sustained hundreds of thousands of dollars' worth of damages, and the plaintiffs are entitled to seek and obtain relief against the defendant pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 et seq.

136.    As a result of the foregoing, the plaintiffs are entitled to obtain and be awarded relief against the defendant under 42 U.S.C. §1983, including but not limited to, (a) an accounting from the defendant, of all personal property which the defendant's employees have seized from each of the plaintiffs, as reflected in the records of the SCPD, (b) a return of all property seized from the plaintiffs by the defendant and/or its agents, (c) an award of compensatory damages against the defendant for any property which is not returned, damages for the loss of use and/or opportunity to sell their property, any damages sustained by their businesses as a result, and a monetary judgment for same, together with (d) an award for statutory attorneys' fees, costs and interests pursuant to 42 U.S.C. §1988 et seq.

**COUNT II**

**CLASS ACTION CLAIM**

**Unlawful Seizure, Procedural and Substantive Due Process**

**Fourth, Fifth and Fifteenth Amendments**

**42 U.S.C. §1983**

137.    The plaintiffs repeat, reiterate and incorporate by reference herein all of the allegations set forth within paragraphs "1" through "136" on behalf of themselves and on behalf of all 205 Precious Metals Dealers listed within Exhibit "N," those being other dealers who have suffered precisely the same constitutional deprivations as the named plaintiffs herein.

138.    As a matter of public record, the plaintiffs are not the only Precious Metals Dealers who suffered these precise types of constitutional deprivations described herein. *See e.g.* Schultz et. al. v. The County of Suffolk, current pending in the United States District Court, E.D.N.Y. under Docket No. 19-CV-00361 (JS)(SIL).

139.    Plaintiffs bring this Class action claim pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and a specific Class of persons who are similarly situated, those being the other licensed Precious Metals Dealers listed in Exhibit "N."

140.    Specifically, the Class consists of all persons who owned or operated businesses within the County of Suffolk, were licensed by the County of Suffolk as "Precious Metal and Gem Exchanges," who had detectives of the SCPD enter their stores and make warrantless seizures of their personal properties, such properties were never returned to them, and neither defendant nor any of its agents ever afforded them (a) an opportunity to object to the warrantless seizure of their property, (b) an opportunity or procedure through which to seek to reclaim their property, or (c) an opportunity to object to the defendant's continued retention or disposal of their property.

141.    Upon information and belief, as a result of such deprivations, the members of the Class have sustained millions of dollars' worth of damages and thus are entitled to seek and obtain relief against the defendant pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 et seq.

142.     As a result of the foregoing, members of the Class are entitled to obtain and be awarded relief against the defendant under 42 U.S.C. §1983, including but not limited to, (a) an accounting from the defendant, of all personal property which the defendant's employees have seized from each of the members, as reflected in the records of the SCPD, (b) a return of all property seized from the members of the defendant and/or its agents, (c) an award of compensatory damages against the defendant for any property which is not returned, damages for the loss of use and/or opportunity to sell their property, any damages sustained by their businesses as a result, and a monetary judgment for same, together with (d) an award for statutory attorneys fees, costs and interests pursuant to 42 U.S.C. §1988 et seq.

## COUNT III
### Declaratory Judgment Based Upon Fourth,
### Fifth, Eighth & Fifteenth Amendment Violations
### As Written and As Applied Constitutional Challenge
### 42 U.S.C. §1983

143.     The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "142" hereinabove, with the same force and effect as if fully set forth at length herein.

144.     Both Articles I and IV of Chapter 563 of the Suffolk County Code, and Suffolk County Rules and Procedures Chapter 20, Section 3 (Exhibits "A," "B" and "O" annexed hereto) are unconstitutional, both *as written*, and *as applied* to the plaintiffs herein.

A.   SCC Article IV Is Unconstitutional on its Face,
Because it Lacks Any Substitute for a Warrant

145.    As an initial matter, SCC Article IV is unconstitutional on its face, because it creates

an inspection scheme, empowers employees of the SCPD to inspect the plaintiffs' records and

premises, and enables them to make warrantless seizures of personal property, while simultaneously

failing to create any substitute for a warrant, or in any way limiting the scope of the inspections it

authorizes.

146.    It is clearly-established law that, to comply with constraints of the Fourth

Amendment, any local municipal law which authorizes the inspection of Precious Metals Dealers'

records must explicitly include an adequate substitute for a warrant, which both: (a) expressly limits

the discretion of those who can conduct those inspections, and (b) limits the scope of the inspections

which it authorizes. *See e.g*. Marchall v. Barlows, 98 S.Ct. 1816 (1978), Gem Fin. Serv. v. City of

New York, 298 F.Supp.3d 464 (2018), Liberty Coins LLC v. Goodman, 880 F.3d 274 (6th Cir

2018).

147.    Significantly, the very purpose for which such requirements are constitutionally

mandated is to prevent the precise types of abuses which the plaintiffs herein have suffered at the

hands of the defendant and its employees.

148.    A simple review of SCC Article IV reflects that it does not meet either of these

requirements. Section §563-41 of Article IV requires dealers to collect an exhaustive list of

information and to maintain same, and Section §563-42 vests employees of the SCPD with

unlimited discretion to inspect those records (during regular business hours), for any reason

whatsoever, or for absolutely no reason at all.

34

149.    This defect renders Article IV unconstitutional *on its face* and given the manner in which it has been used to deprive the plaintiffs of their property without due process as detailed herein, Article IV is contemporaneously unconstitutional *as it has been applied* to the plaintiffs herein.

150.    As detailed herein, the plaintiffs have been subjected to unlawful searches and seizures by employees of the SCPD acting under the authority of that code provision, while entirely unsupervised by the SCPD, and completely unrestrained due to the void of any limiting provision of Article IV, which could have limited the scope of such searches and seizures, and prevented the egregious constitutional injuries sustained by the plaintiffs herein as a result.

B.    Suffolk County Police Department Rules and Procedures Chapter 20 Section 3 is Unconstitutional on its Face Because it Contains no Procedure By Which Person From Whom Employees of the Police Department Seize Personal Property May Seek to Reclaim Same

151.    It is also clearly established law that when police department employees seize personal property, the constraints of due process require that at the time of seizure, the government must: (a) have in place a procedure through which that person may seek to reclaim or recover the property which is being seized from them by the police and (b) the employee of the police department who is seizing such property must give them written notice of what that procedure is, at the time of seizure. *See e.g.* Alexandre v. Cortez, 140 F3d. 406 (2nd Cir. 1998), Butler v. Castro, 896 F2d 698 (2nd Cir. 1990) and McClendon v. Rosetti, 460 F2d 111 (2nd Cir. 1972).

152.    Each time detectives of the SCPD seized property from the plaintiffs, they gave

them the receipts which are annexed to this complaint as Exhibits "C," "D," "E" and "F." But the

detectives did not give the plaintiffs any written notice of the procedure by which the plaintiffs

were, or are, able to seek to reclaim their property.

153.    Nor could they have, because neither the SCPD nor the defendant County has any

such procedure.

154.    Chapter 20 Section 3 (Exhibit "B") represents the Suffolk County Police

Department's *entire* codified procedure which provides for managing, recording and disposing of

personal property (other than automobiles), which is taken into the possession of the police

department by the department's employees.

155.    A simple review of the department's entire procedure reveals that it is

constitutionally defective, on its face, for three (3) reasons.

156.    First, while it encompasses a written procedure for taking into custody property

seized by its employees, as potential evidence or stolen property, it is entirely void of any provision,

rule, regulation or procedure which requires the Police Department to release or return any such

seized property to the person from whom it has been seized, when the police department no longer

possesses any legal basis to retain continuing possession of same.

157.    Alternatively stated, there is absolutely nothing which requires the police department

to release the property once the related criminal proceeding has terminated, a determination has

been made that no such proceeding is to ever be filed, and the property is no longer needed as

evidence.

158.    Second, while the SCPD's written procedure provides for taking seized property into custody, it contains absolutely no procedure through which the persons, from whom the property has been seized, can seek to reclaim same.

159.    Third, and in similar vein, to the extent that *a third party* claims to be *"the true owner"* of property which has been seized by the SCPD, the SCPD routinely releases such property to those claimants without affording the persons from whom the property was seized with notice, or any opportunity to object to the release of their property to such third persons, because Section 3 of Chapter 20 of the SCPD Rules and Procedures does not include any such procedure or notice requirements.

160.    Under clearly established law, these defects render Chapter 20, Section 3, Constitutionally defective on its face.

161.    As described herein, each and every time the defendant's employees seized an item of personal property from the plaintiffs herein under the authority of SCPD Chapter 20, Section 3, they deprived the plaintiffs of their rights to due process under the Fifth and Fourteenth Amendments, as a matter of law.

162.    Accordingly, Section 3 of Chapter 20 of the SCPD Rules and Procedures are contemporaneously unconstitutional as they have been applied, against the plaintiffs' herein.

> C.  SCC Articles I and IV are Unconstitutional as Applied Against
>     The Plaintiffs, Because they Have Been Used in a Retaliatory
>     Manner, Whereby The County Has Imposed Thousands of
>     Dollars in Fines Against The Plaintiffs, For Recording Errors
>     <u>Which Were Caused by The Defendant Itself</u>

163.    Among the unilateral demands which the defendant has imposed upon the plaintiffs and other Precious Metals Dealers, are the record-keeping and recording requirements imposed under Article IV Sections §563-41 and §563-43.

164.    These provisions require Precious Metals Dealers to provide an exhaustive list of information to the defendant, "on forms supplied by the [SCPD]", "on or before the end of each business day" *See* §573-43, Exhibit "A" at page 5.

165.    The "forms," which have been unilaterally chosen by the SCPD, actually refers to a computer software program which is owned, operated and maintained by the SCPD.

166.    Claiming authority to do so under §573-43, the SCPD demands that Precious Metals Dealers "report" the information they are required to provide under Section §563-41, by logging in to the SCPD's software program and entering such data before the end of each business day.

167.    The SCPD's failure to properly operate and maintain such software, however, causes the software to enter false and/or erroneous data into records which are initially created by Precious Metals dealers.

168.    As operated by the SCPD, its software stores data for, among other things, sellers who have either sold something to or pawned something with, a business which is licensed as a Precious Metals Dealer.

169.    In many cases, the information maintained in the SCPD's software is erroneous, in that it contains one or more typographical errors in its stored data. Such errors can be as simple as having one incorrect digit or letter in the driver's license number for a seller.

170.    When, as is mandated by the SCPD, Precious Metals Dealers start recording information into the SCPD's software program regarding a seller from whom they have purchased an item, if the program "recognizes" the seller, it proceeds to "*auto-populate*" the information pertaining to that respective seller.

171.    This means the program automatically fills in the data fields of information which the Precious Metals Dealers are required to input for that seller.

172.    Very often, the data which the SCPD's program auto-populates into a record which the dealer is trying to create is false or erroneous, and the Precious Metals Dealers may not see or detect the erroneous data, and even if they did, they have no way of correcting it.

173.    As a result, the daily reports entered by Precious Metals Dealers into the SCPD's system very often included erroneous data which was entered, not by the dealers, but by the SCPD's software itself.

174.    Precious Metals Dealers have complained to the SCPD about this defect in their recording system, but the SCPD has refused to correct it.

175.    Apparently being well aware of this defect in the SCPD's software, each time a detective of the SCPD chooses to make a warrantless seizure of property from a Precious Metals Dealer, and the dealer objects, or *tries* to object to such seizure, the detective threatens to "audit" or actually "audits" the dealer's records, for the purpose of finding the typographical errors ("typos") which the SCPD's software created within its records pertaining to that dealer.

39

176.    The detective then reports the errors they find to the Suffolk County Department of Consumer Affairs, which then issues violations against the dealer under SCC Chapter 563 Article I, for each typo contained in the SCPD's system, each of which carries a $1,500.00 fine. *See* Exhibit "O" at page 7, §563-9(A) and §563-9(A)(3).

177.    The detective will search for enough typos to charge the dealer with enough "recording violations" to impose $5,000 to $10,000 in fines, for recording errors which were, in fact, erroneously recorded by the SCPD, and NOT by the dealer.

178.    *As applied* against the plaintiffs and other dealers, Articles I and IV of the SCC are unconstitutional, as they are violative of the Eighth Amendment's prohibition against excessive fines, because they provide for imposing tens of thousands of dollars in fines against the plaintiffs for actions which were committed by the defendant, and not the plaintiffs.

179.    *As applied* against the plaintiffs and other dealers, Articles I and IV of the SCC are also unconstitutional, because they deprive the plaintiffs of property, by imposing monetary fines against the plaintiffs, without due process of law, in violation of the constraints of the Fifth and Fourteenth Amendments.

        D.    SCC Chapter 563 Articles I and IV are Unconstitutional
              on their Face, Because they Lack Any Guidelines or
              Standards For Those Charged With Its Enforcement

180.    It is clearly established law that a local municipal ordinance which subjects persons to fines is unconstitutionally void for vagueness, if, among other things, it fails to establish minimal guidelines for the persons charged with its enforcement, to prevent placing unfettered discretion in

same. *See e.g.* Papachristou v. City of Jacksonville, 92 S.Ct. 839 (1972), Chicago v. Morales, 119 S.Ct. 1849 (1999).

181.    As written, Articles I and IV are entirely void of any guidelines for the employees of the defendant County who are charged within their enforcement.

182.    As a direct result of this constitutional defect, the plaintiffs have been subject to the precise type of arbitrary enforcement for which this constitutional requirement is mandated.

183.    As described hereinabove, the defendant's employees who are charged with the enforcement of Article I and IV have charged the plaintiffs with violations of such provisions, and imposed tens of thousands of dollars in fines under same, for actions and data recording errors which were committed and/or caused *entirely* by *the defendant*, as opposed to the plaintiffs.

184.    As such, Articles I and IV are constitutionally defective and void for vagueness, and the plaintiffs are entitled to, among other things, declaratory relief adjudging them to be same, and to injunctive relief, enjoining the continued application of these defective ordinances against the plaintiffs herein, and to seek such relief from the Court pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 et seq.

**COUNT IV**

**CLASS ACTION CLAIM**

**Declaratory Judgment Based Upon Fourth,**
**Fifth, Eighth & Fifteenth Amendment Violations**
**As Written and As Applied Constitutional Challenge**
**42 U.S.C. §1983**

185.    The plaintiffs repeat, reiterate and incorporate by reference herein all of the

allegations set forth within paragraphs "1" through "184" on behalf of themselves and on behalf

of all 205 Precious Metals Dealers listed within Exhibit "N," those being other dealers who have

suffered precisely the same constitutional deprivations as the named plaintiffs herein.

186.    Plaintiffs bring this Class action claim pursuant to Federal Rule of Civil

Procedure 23, on behalf of themselves and a specific Class of persons who are similarly situated,

those being the other licensed Precious Metals Dealers listed in Exhibit "N."

187.    Specifically, the Class consists of all persons who owned or operated businesses

within the County of Suffolk, were licensed by the County of Suffolk as "Precious Metal and

Gem Exchanges," who had detectives of the SCPD charge them with recording violations under

Chapter 563 Articles I and IV of the SCC.

188.    As a result of such virtually identical unlawful charges under those provisions of

the SCC, and property deprivations suffered by all, all members of the class have sustained

identical due process violations at the hands of the defendant and its employees, and have

sustained monetary damages by having been deprived of valuable personal property, and are
equally entitled to seek redress from the Court pursuant to 42 U.S.C. §1983, and 42 U.S.C.
§1988.

## COUNT V

### Violation of New York Constitution Article I, Sec. 6
### (Deprivation of Property Without Due Process of Law)

189.   The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1"
through "188" hereinabove, with the same force and effect as if fully set forth at length herein.

190.   Suffolk County's conduct in causing such deprivations violated plaintiffs' rights to
due process under Article I, Section 6 of the New York State Constitution because the defendant
County deprived the plaintiffs of their personal property without due process of law in:

(a)    initial warrantless searches of the plaintiffs' business premises, and
warrantless seizures of plaintiffs property.

(b)    failing to implement or make available to the plaintiffs any procedure
through which the plaintiffs could seek to reclaim their property,

(c)    failing to provide the plaintiffs notice of any such procedure at the time of
each respective seizure,

(d)    continuing to retain the plaintiffs' property when there remained no lawful
basis for its continued retention, and

(e)    disposing of plaintiffs' property without affording the plaintiffs notice of the
defendant's intention to dispose of their property, or affording them any opportunity or procedure
through which to object to same.

191.    Suffolk knew or should have known that it was unlawful and unconstitutional to seize and thereafter deny possession, release to a third party, sell and/or indefinitely retain plaintiffs' personal property where notice and a hearing upon the validity of such deprivations had not been afforded to the plaintiffs, as parties with ownership interests in the seized property.

192.    Suffolk does not maintain any procedural mechanism for providing hearings after the seizure of personal property from Precious Metals Dealers licensed by the County after its agents regularly seize property from same.

193.    The failure by official Suffolk policymakers to properly train or supervise subordinates regarding the process due in conjunction with the seizure, detention and disposal of personal property, as made clear by numerous controlling court decisions, amounts to deliberate indifference to the rights of persons and parties who own or have interests in personal property which is seized, detained, sold and/or disposed of by Suffolk.

194.    But for Suffolk's depriving policy, decisions, practices, and failures described hereinabove, the plaintiffs would not have been deprived of their property and would have recovered same without delay or with minimal delay, by measures that preserve legitimate interests.

195.    As a direct and proximate result of Suffolk's violation of plaintiffs' rights to due process under Article I, Section 6 of the New York State Constitution, the plaintiffs have suffered general and special damages based upon the loss of their personal property, and the ability to sell their property in the conduct of their business, and are therefore entitled to relief against the defendant herein.

## COUNT VI

### CLASS ACTION CLAIM

**Violation of New York Constitution Article I, Sec. 6
(Deprivation of Property Without Due Process of Law)**

196.     The plaintiffs repeat, reiterate and incorporate by reference herein all of the

allegations set forth within paragraphs "1" through "195" on behalf of themselves and on behalf

of all 205 Precious Metals Dealers listed within Exhibit "N," those being other dealers who have

suffered precisely the same constitutional deprivations as the named plaintiffs herein.

197.     Plaintiffs bring this Class action claim pursuant to Federal Rule of Civil

Procedure 23, on behalf of themselves and a specific Class of persons who are similarly situated,

those being the other licensed Precious Metals Dealers listed in Exhibit "N."

198.     Specifically, the Class consists of all persons who owned or operated businesses

within the County of Suffolk, were licensed by the County of Suffolk as "Precious Metal and

Gem Exchanges," who had detectives of the SCPD enter their stores and make warrantless

seizures of their personal properties, such properties were never returned to them, and neither

defendant nor any of its agents ever afforded them (a) an opportunity to object to the warrantless

seizure of their property, (b) an opportunity or procedure through which to seek to reclaim their

property, or (c) an opportunity to object to the defendant's continued retention or disposal of

their property.

199.    As a result of such virtually identical unlawful seizures and property deprivations suffered by all, all members of the class have sustained identical due process violations at the hands of the defendant and its employees, and have sustained monetary damages by having been deprived of valuable personal property, and are equally entitled to seek redress from the Court.

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiffs pray for relief and request that the Court renders judgment as follows:

### UNDER COUNT I
**Unlawful Seizure, Procedural and Substantive Due Process**
**Fourth, Fifth and Fifteenth Amendments**
### 42 U.S.C. §1983

(a)    Affirmative injunctive relief, in the form of an Order, directing the defendant to provide a full accounting to the plaintiffs of the personal property which the defendant and its agents have seized from the plaintiffs, and

(b)    Affirmative injunctive relief, in the form of an Order, directing the defendant to immediately release and physically deliver back to the plaintiffs' respective places of business, all of the personal property which the defendant and its agents have seized from the plaintiffs, and which remains in the possession of the defendant or its agents and/or employees, and

(c)      Awarding the plaintiffs compensatory damages, and a monetary judgment against the defendant County of Suffolk, in the amount of Five Hundred Thousand ($500,000.00) Dollars, or in such other amounts proven at the trial of this action, for any seized property which is not returned to the plaintiffs, for damages for the loss of use and possession of the seized property, for business losses sustained as a result, and for any other damages sustained by the plaintiffs as a result of the defendant's conduct described herein, together with pre-judgment and post-judgment interest; and

(d)      Awarding the plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b); and

(e)      Awarding the plaintiffs reimbursement for any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

(f)      Awarding the plaintiffs such other and further relief as this court may deem just and proper.

**UNDER COUNT II**

**CLASS ACTION CLAIM**

**Unlawful Seizure, Procedural and Substantive Due Process**

**Fourth, Fifth and Fifteenth Amendments**

**42 U.S.C. §1983**

(a)      Affirmative injunctive relief, in the form of an Order, directing the defendant to provide a full accounting to all Class members of the personal property which the defendant and its agents have seized from them, and

(b)     Affirmative injunctive relief, in the form of an Order, directing the defendant to immediately release and physically deliver back to all of the Class members' respective places of business, all of the personal property which the defendant and its agents have seized from them, and which remains in the possession of the defendant or its agents and/or employees, and

(c)     Awarding all Class members compensatory damages, and a monetary judgment against the defendant County of Suffolk, in the amount of Ten Million ($10,000,000.00) Dollars, or in such other amounts proven at the trial of this action, for any seized property which is not returned to the members of the Class, for damages for the loss of use and possession of the seized property, for business losses sustained as a result, and for any other damages sustained by the Class members as a result of the defendant's conduct described herein, together with pre-judgment and post-judgment interest; and

(d)     Awarding the Class members reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b); and

(e)     Awarding the Class members reimbursement for any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

(f)     Awarding the Class members such other and further relief as this court may deem just and proper.

## UNDER COUNT III
**Declaratory Judgment Based Upon Fourth,**
**Fifth, Eighth & Fifteenth Amendment Violations**
## As Written and As Applied Constitutional Challenge
## 42 U.S.C. §1983

(a)     A declaratory judgment, adjudging and declaring Suffolk County Code Chapter 563 Articles I and IV unconstitutional, void, and unenforceable as against the plaintiffs herein,

(b)     Affirmative injunctive relief, in the form of an Order enjoining the defendant, its agents and employees from applying Suffolk County Code Chapter 563 Articles I and IV to, or against, the plaintiffs herein,

(c)     Affirmative injunctive relief, in the form of an Order, directing the defendant to provide a full accounting to the plaintiffs of the personal property which the defendant and its agents have seized from the plaintiffs, and

(d)     Affirmative injunctive relief, in the form of an Order, directing the defendant to immediately release and physically deliver back to the plaintiffs' respective places of business, all of the personal property which the defendant and its agents have seized from the plaintiffs, and which remains in the possession of the defendant or its agents and/or employees, and

(e)     Affirmative injunctive relief, in the form of an Order directing the defendant to provide a full accounting to the plaintiffs of the fines imposed upon, and collected from, the plaintiffs, under SCC Chapter 563 Articles I and IV, and directing the defendant to disgorge such sums and to tender same back to the plaintiffs herein, and

49

(f)     Awarding the plaintiffs compensatory damages, and a monetary judgment against the defendant County of Suffolk, in the amount of Five Hundred Thousand ($500,000.00) Dollars, or in such other amounts proven at the trial of this action, for any seized property which is not returned to the plaintiffs, for damages for the loss of use and possession of the seized property, for business losses sustained as a result, and for any other damages sustained by the plaintiffs as a result of the defendants' conduct described herein, together with pre-judgment and post-judgment interest; and

(g)     Awarding the plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b); and

(h)     Awarding the plaintiffs reimbursement for any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

(i)     Awarding the plaintiffs such other and further relief as this court may deem just and proper.

**UNDER COUNT IV**

**CLASS ACTION CLAIM**

**Declaratory Judgment Based Upon Fourth,**

**Fifth, Eighth & Fifteenth Amendment Violations**

**As Written and As Applied Constitutional Challenge**

**42 U.S.C. §1983**

(a)     A declaratory judgment, adjudging and declaring Suffolk County Code Chapter 563 Articles I and IV unconstitutional, void, and unenforceable as against the Class members herein,

(b)     Affirmative injunctive relief, in the form of an Order enjoining the defendant, its agents and employees from applying Suffolk County Code Chapter 563 Articles I and IV to, or against, the Class members herein,

(c)     Affirmative injunctive relief, in the form of an Order, directing the defendant to provide a full accounting to the Class members of the personal property which the defendant and its agents have seized from them, and

(d)     Affirmative injunctive relief, in the form of an Order, directing the defendant to immediately release and physically deliver back to the Class members' respective places of business, all of the personal property which the defendant and its agents have seized from them, and which remains in the possession of the defendant or its agents and/or employees, and

(e)     Affirmative injunctive relief, in the form of an Order directing the defendant to provide a full accounting to the Class members of the fines imposed upon, and collected from, them, under SCC Chapter 563 Articles I and IV, and directing the defendant to disgorge such sums and tendering same back to the Class members herein, and

(f)      Awarding the Class members compensatory damages, and a monetary judgment against the defendant County of Suffolk, in the amount of Ten Million (10,00,000.00) Dollars, or in such other amounts proven at the trial of this action, for any seized property which is not returned to the Class members, for damages for the loss of use and possession of the seized property, for business losses sustained as a result, and for any other damages sustained by them, as a result of the defendant's conduct described herein, together with pre-judgment and post-judgment interest; and

(g)      Awarding the Class members reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b); and

(h)      Awarding the Class members reimbursement for any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

(i)      Awarding the Class members such other and further relief as this court may deem just and proper.

## UNDER COUNT V

### Violation of New York Constitution Article I, Sec. 6
### (Deprivation of Property Without Due Process of Law)

(a)      Affirmative injunctive relief, in the form of an Order, directing the defendant to provide a full accounting to the plaintiffs of the personal property which the defendant and its agents have seized from the plaintiffs, and

(b)      Affirmative injunctive relief, in the form of an Order, directing the defendant to

immediately release and physically deliver back to the plaintiffs' respective places of business, all of the personal property which the defendant and its agents have seized from the plaintiffs, and which remains in the possession of the defendant or its agents and/or employees, and

(c)    Awarding the plaintiffs compensatory damages, and a monetary judgment against the defendant County of Suffolk, in the amount of Five Hundred Thousand ($500,000.00) Dollars, or in such other amounts proven at the trial of this action, for any seized property which is not returned to the plaintiffs, for damages for the loss of use and possession of the seized property, for business losses sustained as a result, and for any other damages sustained by the plaintiffs as a result of the defendants' conduct described herein, together with pre-judgment and post-judgment interest; and

(d)    Awarding the plaintiffs reasonable attorneys' fees, costs, and reimbursement for any and all expert fees incurred by the plaintiffs herein, and

(f)    Awarding the plaintiffs such other and further relief as this court may deem just and proper.

## UNDER COUNT VI
## CLASS ACTION CLAIM

**Violation of New York Constitution Article I, Sec. 6**
**(Deprivation of Property Without Due Process of Law)**

(a)    Affirmative injunctive relief, in the form of an Order, directing the defendant to provide a full accounting to the Class members of the personal property which the defendant and its agents have seized from them, and

53

(b)     Affirmative injunctive relief, in the form of an Order, directing the defendant to immediately release and physically deliver back to the Class members' respective places of business, all of the personal property which the defendant and its agents have seized from them, and which remains in the possession of the defendant or its agents and/or employees, and

(c)     Awarding the Class members compensatory damages, and a monetary judgment against the defendant County of Suffolk, in the amount of Ten Million ($10,000,000.00) Dollars, or in such other amounts proven at the trial of this action, for any seized property which is not returned to the Class members, for damages for the loss of use and possession of the seized property, for business losses sustained as a result, and for any other damages sustained by them, as a result of the defendant's conduct described herein, together with pre-judgment and post-judgment interest; and

(d)     Awarding the Class members reasonable attorneys' fees, costs, and reimbursement for any and all expert fees incurred by the plaintiffs herein, and

(f)     Awarding the Class members such other and further relief as this court may deem just and proper.

Dated: Merrick, New York
       July 29, 2019

Yours etc.,

Campanelli & Associates, P.C.

By:  ____/s  Andrew J. Campanelli___
        Andrew J. Campanelli
        *Attorneys for Plaintiffs*
        1757 Merrick Avenue, Suite 204
        Merrick, New York 11566
        (516) 746-1600